**EXHIBIT A**

Victor L. George, State Bar No. 110504
Wayne C. Smith, State Bar No. 122535
LAW OFFICES OF VICTOR L. GEORGE
20355 Hawthorne Blvd, First Floor
Torrance, California 90503
Telephone: (310) 698-0990
Facsimile: (310) 698-0995
E-mail: vgeorge@vgeorgelaw.com

Attorneys for Plaintiff,
PATRICIA ANNE T. SAMSON

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 2 0 2016

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| PATRICIA ANNE T. SAMSON,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, a business, form unknown; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. **BC 6 21 218**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. DISCRIMINATION IN VIOLATION OF FEHA, *CALIFORNIA GOVERNMENT CODE* §§12900 et seq.:<br>  A. PHYSICAL DISABILITY<br>  B. AGE<br>  C. GENDER<br>  D. NATIONAL ORIGIN<br>2. VIOLATION OF PUBLIC POLICY<br>3. RETALIATION IN VIOLATION OF PUBLIC POLICY<br>4. FAILURE TO ACCOMMODATE<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff PATRICIA ANNE T. SAMSON, hereby complains and alleges against Defendants, and each of them, as follows:

///

1
COMPLAINT FOR DAMAGES

## GENERAL ALLEGATIONS

1. Plaintiff is informed and believes and thereon alleges that Defendant WELLS FARGO BANK, NATIONAL ASSOCIATION (hereinafter "WELLS FARGO") is a business organization, form unknown, and at all times mentioned herein, was and is authorized to do business in the State of California, and its business office at which Plaintiff worked is located at 111 West Ocean Blvd., Suite 530, Long Beach, CA 90802, County of Los Angeles, State of California. Defendant WELLS FARGO employs 264,000 employees in the entire entity.

2. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint as to their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned Defendants.

3. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants were the agents and employees of each of the remaining Defendants and, in doing the things hereinafter alleged, were each acting within the course and scope of such agency and employment.

4. The unlawful employment practices complained of herein occurred in the County of Los Angeles, State of California at WELLS FARGO's office in the City of Long Beach, County of Los Angeles, California.

5. Plaintiff, PATRICIA ANNE T. SAMSON, (hereinafter "SAMSON") is currently, and has been, a resident of the County of Los Angeles, State of California at all relevant times. Plaintiff SAMSON is a 49 year old female who was born in the Phillippines. Toward the end of her employment with Defendant, she was diagnosed with and suffered from numerous disabling medical conditions (including anal fissure, cataract, cyst on her ovary, diverticulitis, hemorrhoids and endometriosis). She was also one of the oldest

employees in her business group.

6. On or about October 1, 2012, Plaintiff SAMSON was hired as a Portfolio Manager ("PM") by Defendant WELLS FARGO at a salary of $100,000.00 per year. Portfolio Managers handle financial analysis, structuring of loans, risk analysis and management of portfolio loans. Plaintiff also received bonuses while employed at WELLS FARGO.

7. Throughout her employment of SAMSON was assigned portfolios.

8. Plaintiff's direct Supervisor was Jason Gwin. In the Fall of 2014, Plaintiff discussed and disclosed her illness to Mr. Gwin in a face-to-face meeting. Plaintiff became ill while at WELLS FARGO and for a time became unable to continue working the longer hours (more than 40 hours per week). This requested accommodation limited her work on the new production initiative Mr. Gwin had recently implemented.

9. Plaintiff's medical leave of absence was from October 29, 2014 to December 8, 2014 due to the above described medical conditions: ovarian cysts, endometriosis, diverticulitis, anal fissure, hemorrhoids and cataract / blurry vision. Plaintiff returned to work on December 9, 2014 with her written accommodation from her doctor that she could not continue working more than 40 hours a week. Plaintiff provided her note of accommodation to supervisor Jason Gwin, who fired Plaintiff at Starbucks within ten (10) minutes after her return from 6 weeks of medical leave. Mr. Gwin indicated the termination "was effective" December 12, 2014, but asked Plaintiff to please leave as soon as possible. Mr. Gwin explained because the bank "is not doing well" there "was a need to save money" and no need for a PM; however, five (5) days later, there was a PM job posting for a PM to be hired! After allegedly firing Plaintiff for "no money", Gwin then posted a job listing for a new PM just days after firing PM Plaintiff. Plaintiff was given a sixty (60) day notice of "non-working classification."

10. The entire termination was pretextual as Plaintiff was selected to be "fired" on December 1, 2014 while she was just in the 5th week of medical leave!

3
COMPLAINT FOR DAMAGES

11. Plaintiff alleges her firing was discriminatory because of Plaintiff's physical condition, national origin, age and gender.

12. On or about April 1, 2014, SAMSON informed Customer Service Manager, Melissa Smith, that Plaintiff had numerous women's health issues related to menses, including a cyst on her ovary, suffering from an anal fissure and endometriosis. Plaintiff's relevant medical history leading up to Plaintiff's discriminatory firing was:

- **03/15/2014** - Annual Woman Exam.
- Dr. Singh recommended Plaintiff stop the norethindrone because Plaintiff could be menopausal and better for Plaintiff's health not to take progestogen. Dr Singh Ordered an ultrasound to monitor cyst in ovary within 6 months.
- **Spring 2014** - Plaintiff disclosed and informed Customer Service Manager, Melissa Smith, of Plaintiff's medical condition.
- **June 2014**, 6 month review of Plaintiff was done. Excellent review with NO job performance issues, and evidence of PM2 according to Mr. Gwin's plans. Gwin wanted to hire additional PMs (at least 4) in a proposed reorganization, evidencing that office was doing well and on track regarding performance.
- **09/19/2014** - More disclosure of medical condition to upper management as Plaintiff took PTO due to extreme pain in the abdominal, back, pelvis and rectum. Over the counter pain medication was not working. Plaintiff was too ill to attend office event in Ketchum. Condition was continually communicated to Manager Melissa Smith. Plaintiff's primary care Dr. Inocentes called in authorization for Plaintiff's ultrasound.
- **09/19/2014** - Plaintiff had ultrasound at Pollack Imaging. Evidence of worsening of condition as cyst on right ovary had doubled in size.
- **09/22/2014** - Took PTO and again saw Dr. Singh. Reviewed result of ultrasound. Cyst had doubled in size. Doctor raised concern of potential cancer but will observe first. Dr. Singh again prescribed and returned Plaintiff to norethindrone.

- 09/23/2014 - 09/25/2014 - Plaintiff disclosed her medical condition to more members of management, including Marty Roblee, Direct Supervisor of Loan Team Manager, when Plaintiff contacted Marty Roblee requiring time off as Plaintiff continued feeling terrible pain.
- 09/26/2014 - Plaintiff returned to work and further discussed her medical condition with Melissa Smith. Ms. Smith expressed concern about Plaintiff's condition and suggested Plaintiff work from home. Ms. Smith suggested an ultrasound, and Plaintiff informed her she had just done an ultrasound on 09/19/14 of which the ultrasound located cysts on both ovaries.
- 10/15/2014 - Went to San Francisco to attend training.
- 10/16/2014 - Plaintiff disclosed and explained her myriad of medical problems and conditions to Manager, Jason Gwin. After learning all of Plaintiff's medical issues, problems, etc., Jason Gwin informed Plaintiff her work load would have to increase, consequently increasing work hours and working days for Plaintiff.
- During a one-on-one meeting with Gwin, Gwin informed Plaintiff that he would not be able to hire another PM. He admitted that it was his own fault for not filling the position when management approved the FTE addition. Gwin reiterated to Plaintiff that she must work more hours and work weekends because of the heavy "deal flow" with no help.
- Plaintiff was terminated by Gwin based on Gwin's retaliatory actions. Gwin punished Plaintiff for going on PTO and requesting an accommodation.
- 10/20/2014 - Dr. Singh put Plaintiff back on Lupron because Plaintiff could no longer tolerate the pain. Plaintiff could not sleep at night and was having spasms in the rectum. Dr. Singh told Plaintiff she would have implants in her rectal area.
- 10/27/2014 - Plaintiff emailed Jason Gwin, Marty and Ms. Smith requesting permission to work from home. Plaintiff sent a separate email to Gwin

5
COMPLAINT FOR DAMAGES

stating reason for requesting work from home.

- **10/28/2014** - Plaintiff discussed with Dr. Singh regarding difficulty in obtaining Lupron Depo and filing for disability. Dr. Singh provided leave until 12/02/2014 hoping Plaintiff would improve. Plaintiff and Dr. Singh discussed the possibility of surgery / hysterectomy for Plaintiff.
- **10/29/2014** - Plaintiff began Disability.
- **11/18/2014** - Plaintiff was taking pain medications for endometriosis. She stopped taking such medications to prepare for colonoscopy due to pain in the rectal area. Intensity of the pain medication to a 9 on a scale of 1-10.
- **11/19/2014** - Plaintiff had colonoscopy due to the pain in the rectal area. Plaintiff gets a colonoscopy every three years. Plaintiff's mother died from colon cancer. Plaintiff told Dr. Zaidel that she was experiencing pain from both, endometriosis and was having spasms in rectum. Polyps were removed and biopsy ordered. Pain was thought to result from hemorrhoids, stimulated by preparation of colonoscopy exam. Plaintiff was also diagnosed with diverticulitis.
- **11/24/2014** - PTO leave extended by one week because Plaintiff's experienced continued pain in rectum. Leave extended from 12/02/2014 to 12/08/2014.
- **12/01/2014** - Evidence that Jason Gwin and HR worked on Plaintiff's displacement / termination during her FMLA leave. OWBPA report is dated 12/1/2014.
- **12/05/2014** - Plaintiff made an appointment with Dr. Maeda because she was having blurry vision. Plaintiff was diagnosed with a cataract. Dr. Maeda told Plaintiff the blurry vision could be a side effect from the hemorrhoids (steroids) medication.
- **12/08/2014** - Dr. Singh provided Plaintiff with a release form with restriction. Plaintiff still had terrible pain in rectum.

6
COMPLAINT FOR DAMAGES

- **12/08/2014** - Plaintiff's treated appointment with Dr. Zaidel (gastroentorologist). Her polyps were benign. Plaintiff told Dr. Zaidel of blurry vision and Plaintiff's inability to sleep at night. He performed an exam and Plaintiff was diagnosed with an anal fissure (cut in the lining in the anus).
- **12/08/2014** - Dr. Singh provided a doctor's release note which Plaintiff faxed to "Leave Management." Plaintiff further emailed Gwin, Smith and Marty that she was returning to work the next day (12/09/2014) with restrictions.
- **12/9/2014** - After 6 weeks away on leave, Plaintiff, still in pain, returned to work. Upon arriving after the 6 weeks away, Plaintiff was immediately met by Mr. Gwin at her cubicle. Plaintiff was told to follow him to Starbucks. Plaintiff informed Gwin of the release she had faxed (12/08/14) to the Wells Fargo 800 number and that Plaintiff had a copy of the note in her office. Gwin inquired regarding the restriction and Plaintiff explained she could not work more than 40 hours per week. Upon arriving at Starbucks, Gwin told Plaintiff he was laying her off to "reduce expenses" as Wells Fargo Bank is not doing well. Gwin would not answer when Plaintiff asked who else was being laid off. Plaintiff told Gwin she did not agree with his decision explaining there was a shortage of PMs in the office with too many RMs and/or sales people. Plaintiff inquired how her displacement could help reduce cost.
- Plaintiff reminded Gwin he gave Plaintiff a good review in June 2014 with NO performance issues. Plaintiff met all metrics Gwin mentioned to Plaintiff in June 2014 to allow her promotion to a PM2. Plaintiff even generated cross sell for the office even though this was not Plaintiff's main duty.

Apparently, no consideration was given that Plaintiff was returning after 6 weeks from a medical leave and was diagnosed with numerous other conditions (including a cysts on her ovaries, an anal fissure, endometriosis, cataract, and diverticulitis). When Plaintiff inquired regarding insurance,

    Gwin told Plaintiff he did not know about insurance and for her to call HR.

–    Just days later, Gwin posted a "PM2" opening position in WFB Teamworks (Wells Fargo Bank's job search engine). The posting was only open for 5 days (which was unusual). If opened that brief, then a candidate already has been identified. Clearly, Gwin was looking to replace Plaintiff while she was on FMLA. The salary posted was a $135K midpoint, which saves no money by hiring a PM2.

–    **01/12 and 13/2015** - Dr. Singh ordered a Lupron shot be given to Plaintiff and ordered an ultrasound, which Plaintiff had ultrasound performed.

–    **01/14/2015** - Dr. Zaidel ordered a blood test and CAT scan regarding increase of pain in lower left abdomen and bleeding.

–    **02/09/2015** - Plaintiff was "officially" terminated from Wells Fargo.

13. Throughout the entire time Plaintiff was employed with Defendant, she received praise for her skills and efforts.

14. Once fired, Plaintiff was replaced within two (2) weeks by a healthy, younger, non-Filipino male.

15. At the time of her termination, Plaintiff was receiving the following compensation and benefits:

    a.    Plaintiff was paid $100,000.00 annually;

    b.    Full medical and dental insurance package for Plaintiff;

    c.    Two weeks paid vacation annually;

    d.    Life insurance policy;

    e.    100% Short Term Disability;

    f.    Plaintiff received bonuses; and

    g.    401(k) Plan.

16. As a result of Plaintiff's termination, Plaintiff has been denied all of the above-referenced compensation and benefits.

17. Since her termination by Defendant, Plaintiff has not found comparable employable work and continues earning no money or benefits.

18. Plaintiff was treated in an inferior manner to other co-workers. Others were allowed to address physical disabilities and be accommodated, etc. Plaintiff was refused the ability to do same. Plaintiff was not even allowed to participate in the interactive process and her request for accommodation was simply refused as she was fired. Plaintiff's firing was discriminatory against her based on her age, gender, national origin and physical disability.

19. Plaintiff has timely filed her complaint with the State of California's Department of Fair Employment and Housing, having received a "Right to Sue" letter on May 22, 2015.

### FIRST CAUSE OF ACTION
### DISCRIMINATION IN VIOLATION OF FEHA, *CALIFORNIA GOVERNMENT CODE* §§12900 ET SEQ BASED ON: (A) PHYSICAL DISABILITY; (B) AGE; (C) GENDER, and (D) NATIONAL ORIGIN.
### (By Plaintiff Against Defendants and DOES 1 through 100)

20. Plaintiff incorporates paragraphs 1 through 19 as though fully set forth herein.

21. At all times mentioned herein, *Government Code*, §§12940-12965 *et seq.* were in full force and effect and were binding upon Defendants. Said sections specifically required Defendants to refrain from discriminating against any employee on the basis of physical disability, age, national origin and gender.

22. Plaintiff is informed, believes and thereupon alleges that her physical disability, age, national origin and gender were each motivating factors contributing to Plaintiff's termination by WELLS FARGO on or about December 9, 2014.

23. To the extent that Plaintiff's physical disability, age, national origin and gender were motivating factors contributing to plaintiff's termination by Defendants, said act by Defendants constitutes employment discrimination under the laws of the State of California, of which physical disability, age, national origin and gender are "protected classes." Such discriminatory actions were each substantial factors in causing damages and

COMPLAINT FOR DAMAGES

1  injuries to Plaintiff as set forth in previous paragraphs.

2      24.    Under FEHA, *California Government Code* §§ 12900 *et seq.*, a person with Plaintiff's physical prognosis, cannot be discriminated against based on her disability, age, national origin or gender.

3      25.    Plaintiff is informed and believes and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents and employees of each of the remaining Defendants, and were in part acting within the course and scope of their employment.

4      26.    The conduct set forth herein above was extreme and outrageous and an abuse of the authority of Defendants, and each of them. Said conduct was intended to cause severe emotional distress and was done in conscious disregard of the probability of causing such distress. In particular, Defendants engaged in an intentional and dishonest course of conduct to create a pretext because of Plaintiff's physical disability, age, national origin and gender.

5      27.    As a direct result of the aforesaid acts of Defendants, Plaintiff lost, and will continue to lose, income and benefits, in an amount to be proven at trial. Plaintiff has become distressed, aggravated, humiliated, nervous and embarrassed. This wrongful termination is a substantial factor in causing damage and injury to Plaintiff as set forth above.

6      28.    As a direct result of the aforesaid acts of Defendants, Plaintiff has become mentally upset, distressed and aggravated and has suffered, and will continue to suffer, humiliation, embarrassment and mental and/or emotional distress. Thereby, Plaintiff claims general damages for mental distress and aggravation in a sum according to proof at the time of trial.

7      29.    As a proximate result of Defendants' discriminatory conduct, Plaintiff has and will incur attorneys' fees and costs, which she is entitled to recover under *California Government Code* § 12965(b).

8      30.    Because the acts taken toward Plaintiff were carried out by managerial employees and partners of Defendants acting in a deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages against Defendants in an amount according to proof at the time of trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF PUBLIC POLICY

### (Against All Defendants and Does 1-100)

31. Plaintiff incorporates paragraphs 1 through 30 as though fully set forth herein.

32. The above referenced actions of Defendants constitutes a wrongful termination of Plaintiff in violation of the public policy of the State of California as reflected in its laws and policies. Said laws include, but are not limited to, Article I, Section 8 of the Constitution, as well as *Government Code* §12900, *et seq.* Defendants were obligated to refrain from discharging Plaintiff, or any employee, for reasons which violate or circumvent said policies or objectives which underlie each.

33. As a direct result of the aforesaid acts of Defendants, Plaintiff lost, and will continue to lose, income and benefits, in an amount to be proven at trial. Plaintiff has become distressed, aggravated and embarrassed. This wrongful termination is a substantial factor in causing damage and injury to Plaintiff as set forth above.

34. As a direct result of the aforesaid acts of Defendants, Plaintiff has become mentally upset, distressed and aggravated and has suffered, and will continue to suffer; humiliation, embarrassment and mental and/or emotional distress. Thereby, Plaintiff claims general damages for mental distress and aggravation in a sum according to proof at the time of trial.

35. Because the acts taken toward Plaintiff were carried out by managerial employees and partners of Defendant acting in a deliberate, cold, callous and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages against Defendants in an amount according to proof at the time of trial.

## THIRD CAUSE OF ACTION

## RETALIATION IN VIOLATION OF PUBLIC POLICY

### (By Plaintiff Against All Defendants)

36. Plaintiff incorporates paragraphs 1 through 35 as though fully set forth herein.

37. Plaintiff is informed and believes and thereon alleges that Defendants retaliated against Plaintiff for suffering from severe debilitating physical illnesses that left Plaintiff disabled and unable to work from October 29, 2014 to December 8, 2014. Defendants failed to accommodate Plaintiff as per the 40 hours a week limit provided in writing by Plaintiff's medical doctor instead choosing to fire Plaintiff just ten (10) minutes after her return from the six (6) week medical leave on December 9, 2014, simply firing Plaintiff without WELLS FARGO ever even engaging in any good faith interactive process or accommodating Plaintiff in any manner.

38. It is Plaintiff's legal right to seek all of her legal rights and remedies and attempt to protect herself from violation of the law, without being fired by her employers based on such violations of statutory acts and the law.

39. As a proximate result of Defendants' conduct, Plaintiff has suffered harm, including lost earnings and other employment benefits, humiliation, embarrassment and mental anguish, all to her damage in a sum to be ascertained at trial.

40. In doing the acts set forth above, Defendants retaliated against Plaintiff because: (1) Plaintiff reported her physical disability, age, national origin and gender discrimination claims; (2) Defendants rejected Plaintiff's request for accommodation; instead, simply firing Plaintiff without WELLS FARGO even engaging in any good faith interactive process.

41. As a proximate result of Defendants' conduct, Plaintiff has and will incur attorneys' fees and costs, which she is entitled to recover under *California Government Code* § 12965(b).

42. The conduct of Defendants in retaliating against and terminating Plaintiff, was oppressive, malicious and intentional and such conduct warrants the imposition of punitive damages in a sum according to proof at the time of trial.

///
///
///

## FOURTH CAUSE OF ACTION

## FAILURE TO ACCOMMODATE

### (By Plaintiff Against All Defendants)

43. Plaintiff incorporates paragraphs 1 through 42 as though fully set forth herein.

44. The public policy of the State of California set forth within *Government Code* §12940 supports employment and utilization of persons with a medical condition or physical handicap. If it is within the ability of the employer to make a reasonable accommodation to such medical condition, such as job restructuring, reassignment or transfer, part-time or a modified work schedule, as such reasonable accommodation must be made by the employer.

45. As a result of Plaintiff's diagnosis of anal fissure, endometriosis, cyst on right ovary, cataract / blurry vision and diverticulitis Plaintiff suffered from a "medical condition" as defined by California *Government Code* §12926 (h). At all relevant times, Defendants were aware of this condition. Defendant not only refused to accommodate Plaintiff's condition, Defendant did not even engage in the interactive process with Plaintiff instead choosing, on December 9, 2014, to simply dispose of Plaintiff by firing her.

46. Plaintiff requested a simple reasonable accommodation from Defendants limiting her work week to just forty (40) hours in order to lessen Plaintiff's personal medical burden which included physician written approval for no more than forty (40) hours per work week upon Plaintiff's return to work. Plaintiff's medical request for accommodation was rejected and Defendants' did not even begin to engage in the interactive process, as Plaintiff was simply fired the morning she returned from medical leave.

47. Defendants discriminated and retaliated against Plaintiff based on her medical condition. Defendants refused to provide her any reasonable accommodation and this denial and termination on December 9, 2014 caused Plaintiff severe physical and emotional injury.

48. As a proximate result of Defendants' conduct, Plaintiff has suffered harm, including lost earnings and other employment benefits, humiliation, embarrassment and mental anguish, all to her damage in a sum to be ascertained at trial.

49. As a proximate result of Defendants' discriminatory conduct, Plaintiff has and will incur attorneys' fees and costs, which she is entitled to recover under *California Government Code* § 12965(b).

50. The conduct of Defendants in retaliating and terminating Plaintiff, was oppressive, malicious and intentionally done by managerial agents, and such conduct warrants the imposition of punitive damages in a sum according to proof at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PATRICIA ANNE T. SAMSON requests relief against Defendants, and each of them, as follows:

### FOR THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION FOR DISCRIMINATION, VIOLATION OF PUBLIC POLICY, RETALIATION, AND FAILURE TO ACCOMMODATE.

1. For general damages for humiliation, mental anguish and emotional distress according to proof at the time of trial;
2. For special and compensatory damages for past, present and future loss of earnings, compensation, job benefits, perks, insurance etc., according to proof at trial;
3. For medical expenses resulting from treatment, etc.;
4. For punitive damages according to proof at the time of trial;
5. For Plaintiff's attorneys' fees according to proof at trial; and
6. For such other and further relief as the Court may deem proper.

Dated: May 16, 2016   LAW OFFICES OF VICTOR L. GEORGE

By: _____
VICTOR L. GEORGE
WAYNE C. SMITH
Attorney for Plaintiff,
PATRICIA ANNE T. SAMSON

## DEMAND FOR JURY TRIAL

PLAINTIFF, PATRICIA ANNE T. SAMSON, hereby demands trial by jury in this action now before the Court.

Dated: May 16, 2016

LAW OFFICES OF VICTOR L. GEORGE

By: _____
VICTOR L. GEORGE
WAYNE C. SMITH
Attorneys for Plaintiff
PATRICIA ANNE T. SAMSON