FILED

JUN 28 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PATRICIA ANNE T. SAMSON,<br><br>　　　　　Plaintiff-Appellant,<br><br>　v.<br><br>WELLS FARGO BANK, N.A., a South Dakota corporation; DOES, 1 through 100, inclusive,<br><br>　　　　　Defendants-Appellees. | No.　17-55927<br><br>DC No. CV 16-4839 BRO<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted December 3, 2018
Pasadena, California

Before:　TASHIMA and IKUTA, Circuit Judges, and KENNELLY,[**] District Judge.

　　　Plaintiff-Appellant Patricia Samson appeals from the district court's order

granting summary judgment in favor of Defendant-Appellee Wells Fargo Bank on

---

　　　[*]　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

　　　[**]　The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

Samson's claims of disability discrimination, retaliation, wrongful termination in violation of public policy, and failure to accommodate.  We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

Samson made out a prima facie case of disability discrimination.  Wells Fargo then offered a legitimate, nondiscriminatory reason for her firing:  it says Samson was fired because her position was eliminated in favor of a higher-paying, ostensibly more productive position.  Thus, the question we must decide is whether Samson provided sufficient evidence from which a reasonable jury could find that Wells Fargo's explanation for her firing was untruthful or pretextual.  *See Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1113–14 (Cal. 2000) (adopting the three-part test for disability discrimination claims under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  A nonmoving plaintiff may rely entirely on circumstantial evidence that is specific and substantial to make such a showing, so long as the evidence provides a basis to infer pretext.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000); *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).  Even where no single piece of evidence is independently sufficient to support an inference of pretext, the plaintiff may meet her burden at the summary-judgment stage based on "the evidence as a whole."  *Guz*, 8 P.3d at 1117.

A reasonable jury could find that Jason Gwin's meeting invitation undercuts Wells Fargo's contention that it began the process of firing Samson weeks before her leave. On October 28, 2014, Samson announced to her supervisors at Wells Fargo that she would take a medical leave of absence from her position as a portfolio manager to recover from a severe episode of chronic endometriosis. The next day, Gwin, her supervisor, sent a meeting invitation entitled "Samson Displacement Conversation" to his boss, Stender Sweeney. In the message, Gwin explained that he wanted to "run an idea by [Sweeney] regarding Patricia Samson." When she returned from her medical leave, Samson was fired. The parties forcefully disagree about the import of Gwin's words. Wells Fargo contends that Gwin sought a meeting merely to update Sweeney on an already-ongoing process of firing Samson in light of her medical leave, citing deposition testimony from Gwin, and a human resources official, Kim Pham. Both Gwin and Pham testified that they learned about Samson's plans to take medical leave on or about October 28, 2014, at which point they undertook to confirm whether or not they could proceed with their displacement plans. Samson, on the other hand, argues that Gwin's use of the phrase "I want to run an idea by you," is indicative of something to be discussed for the first time, not a decision already made.

Both sides' interpretations are plausible. On summary judgment, it is not our place to decide between such competing inferences. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, we must view the evidence in the light most favorable to Samson, the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Applying that standard, a jury could reasonably infer that the decision to fire Samson had not yet been made as of October 29 and, instead, that Gwin was about to propose it for the first time. This would undermine Gwin and Pham's testimony that they decided to fire Samson two weeks earlier.[1]

Because a reasonable jury could infer that the decision to terminate Samson was made, or at least initiated, on October 29, one day after Samson gave notice of her medical leave, the temporal proximity of that decision to Samson's leave supports a reasonable inference of pretext. We have repeatedly stated that, "[i]n some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of

---

[1] The dissent insists that Gwin's October 30 email "is not a smoking gun," Dissent at 3, and we agree. But, of course, "a smoking gun [is] not . . . needed to overcome a motion for summary judgment." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1082 (9th Cir. 2019) (Bybee, J., dissenting) (citation and internal quotation marks omitted), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019). It is sufficient, as we explain above, that the email is subject to competing reasonable inferences, and so, is a disputed factor in defeating Wells Fargo's motion for summary judgment.

pretext." *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011); *see also, e.g.*, *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003) ("Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." (quoting *Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003))); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("[E]vidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant.").

Admittedly, California courts have ruled that temporal proximity "does not, *without more*, suffice . . . to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual." *Loggins v. Kaiser Permanente Int'l*, 60 Cal. Rptr. 3d 45, 54 (Ct. App. 2007) (emphasis added). But Samson does not rest on timing "without more"; timing is here only part of the cumulative evidence that supports an inference of pretext. *Cf. Stegall*, 350 F.3d 1061 ("[W]e do not need to rely solely on timing in this case because there exists substantially more.").

The California Supreme Court has held that pretext also may be inferred where an "employer has given shifting . . . justifications for its actions." *Guz*, 8 P.3d at 1119. The district court overlooked that a reasonable jury could find that there were shifting justifications for Wells Fargo's termination of Samson.

Samson gave unrebutted testimony that she was initially told that she was terminated in part because Gwin was "not happy with [her] performance" as a portfolio manager. On October 30, Gwin wrote in his email to Sweeney that if his termination plan did not work, then they "will continue to work with Patricia to try to bring her performance up to par." But before the district court and now on appeal, Wells Fargo argues that Samson's performance was "irrelevant" because the firing decision "was not premised on poor performance by Samson." It argues instead that the sole reason for her termination was the restructuring of the department and the elimination of her position. Viewing the record in the light most favorable to the Samson, a reasonable jury could conclude that Wells Fargo's shifting rationales for the termination support an inference of pretext.

To be sure, "this is a close case" steeped with uncertainty about the events that led to Samson's termination. *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). But "[s]uch uncertainty at the summary judgment stage must be resolved in favor of the plaintiff." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" assessing a motion for summary judgment. *Anderson*, 477 U.S. at 255. Because a reasonable jury could, based on

the evidence in the record, find in Samson's favor on her claims of discrimination, we reverse.

Because Samson raised a triable issue of fact on her disability discrimination claim, we also reverse the district court's summary judgment on Samson's remaining claims of retaliation, wrongful termination in violation of public policy, and failure to accommodate. *See Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005) (stating that retaliation claims under the FEHA are also governed by the *McDonnell Douglas* burden-shifting framework). Because the district court did not reach Wells Fargo's contention that Samson failed to provide evidence that punitive damages are appropriate in this case, it would be inappropriate for us to reach it in the first instance. We thus leave it to the district court to address on remand.

**REVERSED**.

FILED

JUN 28 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Samson v. Wells Fargo Bank*, No. 17-55927
IKUTA, Circuit Judge, dissenting

"[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). Because nothing in the record raises a genuine issue of material fact that Wells Fargo's stated reason for firing Samson, to replace her with a more experienced portfolio manager, was pretextual, I would affirm the district court.

Taking the evidence in the light most favorable to Samson, the record shows that the decisionmakers planned to terminate her position long before they became aware of her disability. Samson worked as a level one portfolio manager (PM1). Her boss, Jason Gwin, wanted to hire a second PM1, but was thwarted by a new head of the Western Region who intended to keep the number of employees down. Gwin and Kim Pham, a human resources officer, came up with a workaround. In a phone conversation on October 13, 2014, they decided to propose eliminating Samson's position, and replacing her with a level two portfolio manager (PM2), someone with more experience who could get more done. Gwin's boss, Stender Sweeney, approved the plan on October 21.

A week later, on October 28, Samson first informed Gwin that she required a medical leave of absence. The next day, Gwin asked human resources whether, in

light of Samson's leave, he could still go forward with his staffing plan. Gwin got approval from the human resources department. That same day, he sent an email to Sweeney, saying "Please let me know if you're available and at what number. I want to run an idea by you regarding Patricia Samson." Gwin later testified that he asked Sweeney whether he could go still forward with his staffing plan. Sweeney approved.

On October 30, 2014, Gwin sent Sweeney an email formally requesting replacing Samson with a PM2. The email stated that "[t]his plan only works if I have a commitment to hire a PM2. If I am unable to hire a PM2 we will continue to work with Patricia [Samson] to try to bring her performance up to par." The new Western Region head approved the plan.

Based on the evidence in the record, no reasonable juror could conclude that Gwin, Pham, and Sweeney knew that Samson had a disabling condition before they agreed to replace her. There is no evidence in the record contradicting Gwin's and Pham's testimony that they developed the plan to replace Samson during their conversation on October 13. Nor is there any evidence in the record contradicting Gwin's testimony that his email to Sweeney on October 30 related to the question whether he could go still forward with the staffing plan. The majority hangs its hat solely on a single phrase in Gwin's October 30 email: "I want to run an idea by you." The majority speculates that this phrase could mean that Gwin did not

propose to fire Samson until that date.

But telling your boss that you "want to run an idea" by him is not a smoking gun suggesting that the unrebutted testimony of Gwin, Pham, and Sweeney is pretextual. In fact, it is sheer speculation to suggest, as the majority does, that the phrase means something other than what Gwin said it meant. No reasonable juror could find, based on this phrase, that Gwin, Pham and Sweeney lied when they testified that they had already decided to replace Samson with a PM2. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354–55 (2000).

Because there is no evidence that Wells Fargo's stated reason for terminating Samson was pretextual, the temporal proximity (between the statement "I want to run an idea by you" and Samson's termination) is irrelevant. Nor is it relevant that Gwin reasonably concluded that he would have to try to bring Samson's performance up to par if he couldn't hire a PM2. In fact, there is not a scintilla of evidence that Wells Fargo fired Samson for any reason other than the implementation of its staffing plan. The majority's conclusion that Gwin's request to run an idea by his boss creates a genuine issue of material fact that Wells Fargo fired Samson for discriminatory reasons is completely baseless. Accordingly, I dissent.

**United States Court of Appeals for the Ninth Circuit**

**Office of the Clerk**
95 Seventh Street
San Francisco, CA 94103

**Information Regarding Judgment and Post-Judgment Proceedings**

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)   A.   Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  ▶ A material point of fact or law was overlooked in the decision;
  ▶ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  ▶ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

  **B.   Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

- ▶ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
- ▶ The proceeding involves a question of exceptional importance; or
- ▶ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3) Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ▶ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ▶ and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to (*party name(s)*):

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**  **Date**

(use "s/[typed name]" to sign electronically-filed documents)

| COST TAXABLE | REQUESTED (each column must be completed) | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) (*Opening Brief; Answering Brief; 1st, 2nd, and/or 3rd Brief on Cross-Appeal; Intervenor Brief*) | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | | $ |
| | | | **TOTAL:** | $ |

***Example:*** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:
No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);
TOTAL: 4 x 500 x $.10 = $200.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 10** Rev. 12/01/2018