Victor L. George, State Bar No. 110504
Wayne C. Smith, State Bar No. 122535
LAW OFFICES OF VICTOR L. GEORGE
20355 Hawthorne Blvd, First Floor
Torrance, California 90503
Telephone: (310) 698-0990
Facsimile:  (310) 698-0995
E-mail:      vgeorge@vgeorgelaw.com
                 wsmith@vgeorgelaw.com

Attorneys for Plaintiff,
PATRICIA ANNE T. SAMSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA ANNE T. SAMSON,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, a business, form unknown; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE No. CV-16-04839 GW (AGRx)<br>[Assigned to the Hon. George H. Wu, Courtroom 9D]<br><br>**PLAINTIFF'S SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR ATTORNEYS FEES**<br><br>[Filed concurrently with:<br>Declaration of Wayne C. Smith]<br><br>Date:    March 29, 2021<br>Time:    8:30 a.m.<br>Crtrm:   9D<br><br>Complaint filed: May 20, 2016<br>Trial Date:        March 10, 2020 |

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   PLAINTIFF'S TRIAL COUNSEL (LOVG) ARE ENTITLED TO
      $1,710,802 in Fees AND APPELLATE COUNSEL(ECB) ARE
      ENTITLED to $275,120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

      A.    The Jardini "Expert" Declaration Should be Disregarded . . . . . . . . . .  2

            1.    The KPC "Audit" and USAO Matrix Lack Foundation. . . . . . .  2

      B.    Jardini Fails to Not only Address His Hourly Rates, but the Rates
            of Other Sheppard Mullin Attorneys . . . . . . . . . . . . . . . . . . . . . . .  4

      C.    Only Plaintiff has Provided the Court with the Actual Market Rate
            Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

      D.    In Light of Sheppard Mullin's 1,070 Billed Hours by Four Attorneys,
            Jardini Failed to Justify a Reduction in Plaintiff's Hours
            by a 135 Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

      E.    Plaintiff is Entitled to Time incurred Opposing the JMOL. . . . . . . . .  8

      F.    Appellate Counsel, ECB, is entitled to its Appellate Fees
            of $50,000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

      G.    Plaintiff is Entitled to a 2.0 Multiplier. . . . . . . . . . . . . . . . . . . . . . .  12

            1.    Defendant's Requested Negative Multiplier should be Rejected
                  as an Attempt to Undermine the Public Policy Underlying
                  FEHA and Discourage Meritorious Claims. . . . . . . . . . . . . .  12

            2.    Wells Fargo is Guilty of Misrepresenting Pre-Trial
                  Settlement Discussions . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

i

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ani-Deng v. Jeffboat, LLC*
    (7th Cir. 2015) 777 F3d 452 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*City of Los Angeles v. Metropolitan Water Dist. of Southern California*
    (2019) 42 Cal.App.5th 290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Harman v. City and County of San Francisco*
    (2006) 136 Cal. App. 4th 1279 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

*Hensley v. Eckerhart*
    (1983)  461 U.S. 424 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ketchum v. Moses*
    (2001) 24 Cal.4th 1122  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Kyle v. Campbell Soup Co.*
    (9th Cir. 1994) 28 F.3d 928 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Serrano IV*,
    (1982) 32 Cal.3d at 635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Tribble v. Gardner*,
    (9th Cir. 1988) 860 F.2d 321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Willis v City of Fresno*
    (9th Cir 2017) 680 Fed Appx 589 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Yamada v. Snipes*
    (9th Cir 2015) 786 F.3d 1182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Codes, Statutes, Rules**                                                **Page(s)**

Federal Rules of Civil Procedure, Rule 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PLAINTIFF'S SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR ATTORNEYS FEES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Trial counsel for Plaintiff ("LOVG") is entitled to a lodestar of $814,050, plus an additional $4,125 for preparation of this surreply for a total lodestar of $818,175 with a 2.0 multiplier ($1,636,350), plus $74,452 for opposing the defense JMOL for a **total of $1,710,802.**

Appellate counsel ("ECB") is entitled to fees of $50,000 for the successful handling of the prior appeal from the grant of summary judgment, in addition to its fees ($207,120) for the primary handling of the opposition to the JMOL, for a **total of $257,120.**

Collectively, Plaintiff's counsel are entitled to an award of **$1,967,922.**

Wells Fargo spends much of its Supplemental Opposition arguing about the fees on the JMOL. However, there is no doubt that the punitive damage award was "related" to the jury award and based on the same common core of facts. *Harman v. City and County of San Francisco* (2006) 136 Cal. App. 4th 1279, 1311 ("an unsuccessful claim will be unrelated to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.").

Since the punitive damages were related and intertwined with the remainder of the claims in the verdict, Plaintiff's counsel is entitled to all of their time in opposing the JMOL, even though the Court ultimately granted the motion and struck the $400,000 punitive damage award given by the jury.[1]

With respect to the lodestar calculation, the only admissible evidence related to the market rate for employment attorneys with the experience of Plaintiff's counsel was provided by the Plaintiff and established that the requested hourly rate of $1,050 for Mr.

---

[1] Neither LOVG nor ECB are seeking any multiplier on the portion of the fees incurred in opposing the JMOL.

George and $825 for Mr. Smith are well in line with the LA market for experienced employment attorneys.

Nor, given the fact that Sheppard Mullin billed 1,070 hours versus the 900 billed by Plaintiff, is there any basis for any further reduction as urged by the paid defense "expert", Mr. Jardini, who went to great lengths to ignore the actual LA market when he claimed that Mr. George and Mr. Smith should receive an hourly rate of $600 and $500, respectfully, even though they have had numerous fee awards at $950 and $675 since 2014.

Finally, in *Serrano IV*, the Court summarized why *full compensation* to contingency-paid counsel is so essential to the public interest. It noted the danger that: Citizens of ordinary means are unlikely to file, and *competent private practitioners are unlikely to accept*, public interest litigation, however meritorious, without *some assurance* of compensation that *fairly covers* the legal services required. ((1982) 32 Cal.3d at 635, footnote omitted, emphasis added.)

The term "fairly" in this context means matching the hourly rates of comparable practitioners *plus* adding a "premium" on top to compensate for contingent risk and/or other specified factors (*Ketchum, supra*, 24 Cal.4th at 1136.).  In keeping with the policy underlying FEHA to fully compensate successful litigants, LOVG should be entitled to a 2.0 multiplier on the non-JMOL portion of the fee award.

**II.   PLAINTIFF'S TRIAL COUNSEL (LOVG) ARE ENTITLED TO $1,710,802 in Fees AND APPELLATE COUNSEL(ECB) ARE ENTITLED to $275, 120**

**A.   The Jardini "Expert" Declaration Should be Disregarded**

**1.   <u>The KPC "Audit" and USAO Matrix Lack Foundation</u>**

In its opposition Plaintiff raised numerous objections to the Jardini declaration including his obvious bias from numerous defense engagements, the lack of methodology and foundation for his "audit" (Exhibit "K"), the inapplicability of out of market USAO Matrix (Exhibit "L"), his lack of consistency in departing downward from these

2

publications, his failure to acknowledge his own rates and the rates of other Sheppard Mullin attorneys and even to address actual awards in the Los Angeles area. All lead to the inescapable conclusion that his opinion that Mr. George and Mr. Smith are only entitled to hourly rates of $600 and $500, respectively, are merely arbitrary numbers pulled out of the air.[2]

The latest opposition fails to even address these fatal defects in the defense analysis.

For example, Exhibit K, the KPC Legal "audit." The "audit" apparently is limited to sixty-five "timekeepers" over a four (4) year period. Beyond the fact of the limited data, it is apparent that NONE of those "timekeepers" were employment law practitioners, let alone plaintiff-side ("These include business litigation, and other work that typically commands comparable fees to the within matter." Jardini Decl., ¶49:19-20.). One cannot discern the nature of the practices that were audited, i.e., litigation or transactional or even the areas of practice. Since Mr. Jardini refuses to identify a **single employment matter** he audited, let alone a plaintiff-side employment audit, there is no factual support for the conclusory statement that this audit contains any probative information for a plaintiff-side employment case. See, *Ani-Deng v. Jeffboat, LLC* (7th Cir. 2015) 777 F3d 452, 454-455 (an affidavit by plaintiff's coworker that plaintiff was mistreated in the workplace was "entitled to no weight, as it had no foundation".).

Jardini's reliance on the USAO Attorney's Fees Matrix (Exhibit "L") fares no better. By its very terms it is limited to the District of Columbia civil cases (The matrix

---

[2] The effective hourly rates the Defense Supplemental Opposition is urging is $262 for Mr. George and $206 for Mr. Smith, substantially less than the $315 per hour charged by the most junior member of the defense trial team, Ms. Goldstein, a 2017 admittee. According to the Defense, the Plaintiff's lodestar should be LESS than what Wells Fargo paid Sheppard Mullin ($414,962.31 vs. $435,000) and then a negative .5 multiplier should be applied so that Plaintiff's counsel should receive less than half what Wells Fargo paid Sheppard Mullin ($207,481.76) reducing their effective hourly rate to less than a 2017 admitte in an employment discount insurance defense practice! Obviously, that would be counter to the public policy underlying FEHA to fully compensate counsel.

3

has not been adopted by the Department of Justice generally for use outside the District of Columbia, or by other Department of Justice components, or in other kinds of cases." Footnote 1).[3]

Even though the USAO matrix is of a market 3000 miles away and has no applicability to the present matter in Southern California, Jardini goes one step further because his opined hourly rates of $600 and $500 are **even less** than what the USAO matrix provides!

Both Mr. George (1983 Admittee) and Mr. Smith (1986 Admittee) have been practicing law for 38 and 35 years, respectively. Per the USAO matrix, Mr. George and Mr. Smith would fall into the $637 per hour category as the most seasoned of attorneys. However, the $600 per hour Jardini opines as a reasonable rate for Mr. George equates to only a 21-30 year counsel and the $500 per hour rate he opines is reasonable for Mr. Smith equates to a less than 11-15 year attorney. (Jardini Decl., ¶60).

Jardini isn't even following his own analysis or even pretending to be objective since at a minimum he has to concede $637 per hour for both Mr. George and Mr. Smith and then add on from there since Jardini concedes that a higher rate might apply in the Central District. ("If the Central District rates are higher, they are only marginally higher than DC area . ." Jardini Decl., ¶59).

Jardini departs from his own analysis without explanation, further demonstrating the arbitrariness and lack of consistency of his opinion.

**B.      Jardini Fails to Not only Address His Hourly Rates, but the Rates of Other Sheppard Mullin Attorneys**

Beyond Jardini's dubious methodology and his unwarranted reliance on the

---

[3] Jardini takes exception to the reference to the "NLJ Billing Survey: $1,000 Per Hour isn't Rare Anymore" in the Declaration of David deRUBERTIS, Esq. (DeRUBRTIS Decl., ¶17). According to Jardini: " The NLJ survey is national in scope. It is not limited to the Los Angeles, or the Central District. Since rates in the locality of the pending action are the touchstone for lodestar rates, the NLJ rates have no real applicability." Jardini Decl., ¶52. Yet, he hypocritically touts the USAO matrix from Washington D.C.!

"audit" and USAO matrix, Jardini ignores the reality of the market in terms of what happens in the real world, particularly as it relates to cases involving both he and Sheppard Mullin in Southern California.

- 2014 - In *Butler v. Homeservices Lending LLC* 2014 WL5460447, the Court, recognizing the "discount" practice of insurance defense firms, rejected Mr. Kaufman's claim that the 2014 the market rate for attorneys in Los Angeles and San Diego was $480 per hour and granted the requested hourly rates of $600/hour and $550/hour;

- 2016 - in *Erhart v. BOFI Holding Inc*, Case No. 15-cv-2287 -BAS-NLS, one of Mr. Kaufman's partners, Polly Towill, Esq., submitted her declaration attesting to her hourly rate of $650 and the $550 hourly rate of an associate, Alison N. Kleaver, Esq., a 2007 admittee. Towill Decl., ¶5 **(Exhibit 2)**;

The Sheppard Mullin rates charged to its clients in 2014 and 2016 are **still higher** than Jardini's $600 and $500 hourly rates he opined reflect the 2020 market rates. Nothing ever gets cheaper in life so those hourly rates from 2014 have only gone up over the last seven (7) years! In fact, Jardini admits that the hourly rates increase by as much as 5% per year. (Jardini Decl., ¶49).  With respect to Mr. Jardini:

- In 2010 - in *Silva v. Getronics NV*, LASC Case No. BC368049, Mr. Jardini submitted a declaration requesting attorneys fees of $550 per hour. **(Exhibit 3, ¶22).**

- 2011- in *Rafales v. M/S Erodam,* USDC Case No. CV-10-4845 AHM (AJSx), Jardini sought an hourly rate of $675 - an increase of $125 in a year! **(Exhibit 4, ¶31).**

- 2012 - in *Augustus v. American Commercial Security Services*, LASC Case No. BC336416, Jardini sought an hourly rate of $753 **(Exhibit 5)**.

In short, by 2010, Jardini was already approximating the rates he opines are the current market rates for Plaintiff's counsel ($550) in 2020.  However, by 2011 and 2012, Jardini was claiming hourly rates well in excess of what he claims is the current market rate ($753).  One can readily expect that in light of a claimed 2012 hourly rate of $753, his current hourly rate must be well in excess of $1,000 per hour.[4]

---

[4] Assuming an annual 5% increase in hourly rates, Jardini's rates in 2020 would have been $1,111 per hour.  Making the reference to the NLJ Billing Survey: $1,000 Per Hour isn't Rare Anymore" in the Declaration of David deRUBERTIS, Esq. (DeRUBRTIS

PLAINTIFF'S SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR ATTORNEYS FEES

**C.    Only Plaintiff has Provided the Court with the Actual Market Rate Information**

So we know that Jardini and the defense are not providing real numbers regarding the true market rate.  On the other hand, Plaintiff **has** provided evidence of what is **actually** being awarded in single plaintiff employment cases in the local market.  Those numbers are well in line as to the reasonable hourly rate sought by Plaintiff's counsel for actual plaintiff employment law practitioners in the LA market:

• 2014 - $850 - *Baez v. BUSD*, LASC Case No. BC372092 (DeRUBERTIS,Decl.,¶18)

• 2014 - $850 - *Kuwahara v. Gakuen*, LASC Case No. BC454896 (DeRUBERTIS, Decl.¶18);

• 2015 - **Stipulated** $1,075 for lead counsel and $825 for second chair - *Jonesv. Wells Fargo Bank, NA.*, LASC Case No. BC337821 (Pine Decl., Decl.¶10)₅;

• 2016 - $950 - *Godinez v. Alta Dena Certified Diary LLC*, USDC Case No.CV 15-01653 RSWL (Ssx) (DeRUBERTIS, Decl.¶18);

• 2016 - $950 - *Mackey v. Helinet*, LASC Case No. BC528671 (DeRUBERTIS, Decl.¶18);

• 2017-$1,100 - *Moland v. McWane, Inc.*, LASC Case No. BC559 (DeRUBERTIS, Decl.¶17);

• 2018 - $1,100 - *Lauren Pinter-Brown, MD. V. Regents of the Univ. Of California*, LASC Case No. BC624838 (DeRUBERTIS, Decl.¶17);

• 2019 - $1029 - Partner; $760 Associate (Supplemental Pearl Decl., ¶12) (Exhibit 1).

In addition to **actual** awards, the Plaintiff provided further **actual** LA market data by referencing what defense firms, who are not constrained by the EPLI defense

Decl., ¶17), quite appropriate.

6

discount practice, actually charge:

• Paul Hastings - Partners: (1) Dennis Ellis - $1,275 (2018); $1,200 (2017);$1,100 (2016); $1,050 (2015); (2) Elena Baca - $1,200 (2019); $1,050 (2018);$1,050 (2017); $1,025 (2016); $975 (2015). (DeRUBERTIS, Decl.¶20)

• Paul Hastings - Associates - between 2014-2019 - low $475 to a high of $875. (DeRUBERTIS, Decl.¶20)

**D.      In Light of Sheppard Mullin's 1,070 Billed Hours by Four Attorneys, Jardini Failed to Justify a Reduction in Plaintiff's Hours by a 135 Hours**

Mr. Kaufman, as fine of a person and attorney as he is, is seemingly a tad guilty of tooting his own horn by implying how the Court was able to witness he was a veritable one man band and able to draft his own pleadings, argue etc., while seemingly ignoring that his firm utilized four (4) attorneys - 2 partners and 2 associates - billing 1,070 hours - almost 200 hundred more hours than Plaintiff's counsel (Kaufman Decl., ¶22).[5] The Defense further ignores the fact that Wells Fargo is incredibly wealthy and has bottomless resources. Against that, Plaintiff billed 900 hours. Moreover, Mr. Kaufman hasn't even subjected his firm's bills for the same sort scrutiny as Plaintiff's bills are being subjected to.

The impropriety of the defense argument is readily apparent by what the defense is attempting to do in this case.  Wells Fargo is essentially attempting to turn the FEHA policy of encouraging meritorious claims on its head to discouraging such claims by arguing to the Court the prevailing counsel **should receive less than the losing counsel who is subject to an insurance defense business model**.  That attempt should be rejected out of hand.

///

---

[5] Sheppard Mullin claims to have 900+ attorneys throughout 16 national and international offices.

7

First, the defense is arguing that the Plaintiff's lodestar should be a **total** of $414,962.31 - ½ of the requested lodestar of $814,050. Wells Fargo's counsel, who lost, was paid **$435,000** (based on 1,077 hours of billed time) - $21,000 **more** than what it claims Plaintiff's counsel should receive as its lodestar. Then, not content with attempting to force Plaintiff to accept an effective hourly rate that is **less than the defense industry EPLI discount practice**, the defense further argues a negative multiplier of .5 should be applied to slash that lodestar in half to $207,481.16.

Wells Fargo is basically arguing that Mr. George's and Mr. Smith's hourly rate should be limited to 25% of their requested hourly rate so that Mr. George's effective rate is $262 per hour ($1,050 x .25) and Mr. Smith's effective rate is $206.25 ($825 x .25)!

The Defense is obviously overreaching and as such, loses all credibility by suggesting that Plaintiff's counsel, with well over 30 years of practice each who represented a prevailing Plaintiff, should receive **effectively less of an hourly rate than even the $315 billed by Ms. Goldstein, a 2017 admittee in a EPLI insurance defense discount practice!** (Kaufman Decl., ¶22).

### E.    Plaintiff is Entitled to Time incurred Opposing the JMOL

Despite the fact that literally after a year of post-trial litigation Plaintiff was ultimately unsuccessful in defending the $400,000 punitive damage award, Plaintiff is still entitled to $74,452 (LOVG) and $207,120 (ECB) incurred in opposing the JMOL. However, in light of the lack of success, Plaintiff is not seeking a multiplier on either of these awards.

In *City of Los Angeles v. Metropolitan Water Dist. of Southern California* (2019) 42 Cal.App.5th 290, 307, the Court of Appeal held:

> A prevailing party who qualifies for an award under Code of Civil Procedure section 1021.5 is entitled to compensation for all hours reasonably spent by its counsel. (Serrano v. Unruh (1982) 32 Cal.3d 621, 632–633, 186 Cal.Rptr. 754, 652 P.2d 985 (Serrano).) This includes fees for proceedings " 'intertwined inextricably' " with the litigation. (Wallace v. Consumers Cooperative of Berkeley, Inc. (1985) 170 Cal.App.3d 836, 848, 216 Cal.Rptr. 649.) There is no requirement that each motion or

8

opposition be successful to be reasonable. (Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d 668, 685, 186 Cal.Rptr. 589, 652 P.2d 437.) "Litigation often involves a succession of attacks upon an opponent's case; indeed the final ground of resolution may only become clear after a series of unsuccessful attacks. Compensation is ordinarily warranted even for unsuccessful forays." (City of Sacramento v. Drew (1989) 207 Cal.App.3d 1287, 1303, 255 Cal.Rptr. 704.) 42 Cal.App.5th at 307.

Accordingly, Plaintiff is entitled to fees based on unsuccessful, but related claims that are based on the same set of operative core facts.

In *Harman v. City and County of San Francisco* (2006) 136 Cal. App. 4th 1279, 1311, (*Harmon I*) the lawsuit was brought by three former airport employees for discrimination that originally was limited to equitable relief but was later amended to include monetary damages on behalf of all three plaintiffs. However, two of the plaintiffs lost their cases on summary judgment. The sole remaining plaintiff won approximately $30,000 for compensatory damages. Regardless, the Court affirmed an attorneys fees award of $1,113,905.40.

In analyzing what claims were related and compensable versus what claims were unrelated and not compensable, the Court of Appeal, citing *Hensley v. Eckerhart* (1983) 461 U.S. 424, held:

> The court recognizes that "there is no certain method of determining when claims are 'related' or 'unrelated,'" (citation omitted) but it instructs the court to inquire whether the "different claims for relief ... are based on different facts and legal theories." (citation omitted) If so, they qualify as unrelated claims. Conversely, related claims "will involve a common core of facts or will be based on related legal theories." (citation omitted)
> While the courts have sometimes applied the Hensley distinction without elaboration (see Corder v. Gates (9th Cir.1991) 947 F.2d 374, 379), we find other authority that attempts to give the distinction greater precision. In Webb v. Sloan (9th Cir.2003) 330 F.3d 1158, 1168, the court emphasizes that the concept of a related Hensley claim embraces claims that involve "a common core of facts or [, alternatively,] are based on related legal theories." The Seventh Circuit in Mary Beth G. v. City of Chicago (7th Cir.1983) 723 F.2d 1263, followed by a line of Ninth Circuit decisions, suggests that "a useful tool for making this determination is to focus on whether the claims seek relief for essentially the same course of conduct. **Under this analysis, an unsuccessful claim will be unrelated to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.**" (citations omitted). (Emphasis added).136 Cal. App. 4th 1279 at 311.

9

It is beyond dispute that Plaintiff's claims for punitive damages involved a "common core of facts" and were "based on related legal theories" as the claims returned by the jury.

The defense cites to inapplicable cases outside the Ninth Circuit where post-trial motions were deemed unrelated to the claim. However, that is not the case here as punitive damages are clearly directly related to the conduct found by the jury. Accordingly, all of the hours spent defending the punitive damage award is compensable.

As evident from the billings, appellate counsel, ECB, was primarily responsible for the post-trial briefing, but obviously ECB, not being trial counsel, could not act in a vacuum, necessitating the continued involvement of trial counsel both at the numerous hearings following the jury's award.

Accordingly, ECB is entitled to their fees of $207,120 and LOVG is entitled to an award of $74,452.

**F.     Appellate Counsel, ECB, is entitled to its Appellate Fees of $50,000**

Wells Fargo argues Plaintiff's request for fees which includes fees incurred for her successful Ninth Circuit appeal reversing summary judgment, is untimely. Wells Fargo is wrong.

A plaintiff's motion for fees does not lie until the plaintiff is the prevailing party on the merits of her claim. *Yamada v. Snipes* (9th Cir 2015) 786 F3d 1182, 1209 (holding plaintiffs' attorney fees should have been awarded in the trial court after their *merits victory* became final, notwithstanding that plaintiffs provided on an interlocutory appeal that did not decide the merits of the case); *Willis v City of Fresno* (9th Cir 2017) 680 Fed Appx 589, 592 ("we reject defendants' argument that the district court erred by awarding plaintiffs fees for work performed on the prior appeal. Plaintiffs were not required to file a motion requesting fees at the conclusion of the prior appeal because at that point they were not prevailing parties under 42 U.S.C. § 1988; all they had won on appeal was the right to pursue their claims at trial. Thus, any motion for attorney's fees

10

at that time would have been premature. See *Tribble v. Gardner*, 860 F.2d 321, 328 (9th Cir. 1988)").

Further, a motion for attorney fees does not lie until there is a *final judgment*. FRCP 54 provides the motion for fees must be filed and served no later than 14 days after entry of final judgment. FRCP 54(d)(2)(B)(i); *Kyle v. Campbell Soup Co.* (9th Cir. 1994) 28 F3d 928, 929-930 (the time for filing motion for attorney fees begins to run after entry of *final judgment*). This abbreviated time period is designed "to assure that the opposing party is informed of the claim before the time for appeal has elapsed." FRCP 54, Adv. Comm. Notes (1993).

On February 1, 2021, this Court entered its order on Wells Fargo's renewed motion for JMOL.  Plaintiff filed its reply/amended motion for fees on February 12, 2021, both within the Court's scheduling deadline and within 14 days after this Court filed its order on Wells' Motion for JMOL. Also, plaintiff filed her Notice of Appeal on February 25, 2021, within 30 days after the Court's order on Wells' Motion for JMOL.

To recap the pertinent post-trial proceedings, Plaintiff sets out the full docket text for CD 178, entered on February 1, 2021:

> MINUTE ORDER (IN CHAMBERS) - RULING ON DEFENDANT WELLS FARGO BANK, N.A.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(a) [111] by Judge George H. Wu. Attached hereto is the Court's final ruling on Plaintiff's renewed Judgment as a Matter of Law ("JMOL"). Previously, Plaintiff's counsel had filed a Motion for Attorney's Fees (Docket No. 117) which the Court took off-calendar pending its decision on the JMOL (Docket No. 136). The parties are to confer on dates for Plaintiff's filing of an amended Motion for Attorney's Fees, Defendant's Opposition, and Plaintiff's Reply. The parties are to submit a joint report on said dates by noon on February 5, 2021, and the Court will hold a scheduling conference on February 8, 2021 at 8:30 a.m. to discuss the dates.

Thus, to emphasize, the Court took the initial motion for attorneys' fees filed on April 8, 2020 (CD 117) off calendar pending its final ruling and, after the Court entered its final ruling granting Wells Fargo's Motion for JMOL, directed plaintiff to file an amended motion for fees. The Court's scheduling order reads as follows:

> MINUTES OF TELEPHONIC SCHEDULING CONFERENCE held before Judge George H. Wu. The Court adopts the dates in the Joint Report [179] as follows: Due date for Plaintiff's Reply/Amendment February 12, 2021. Due date

11

for Defendant's Surreply/Opposition March 1, 2021. Due date for Plaintiff's "last word" brief March 16, 2021. Hearing on Plaintiffs Motion for Attorneys' Fees March 29, 2021 at 8:30 a.m. Court Reporter: Terri A. Hourigan. (mrgo)

In short, Plaintiff's reply/amended motion for fees filed on February 12, 2021 seeking, inter alia, fees she incurred in her successful appeal resulting in reversal of summary judgment, is timely, both within the court rule and within this Court's Scheduling Order.

Finally, Wells Fargo's claim that Plaintiff's new, appellate counsel unreasonably spent 95 attorney hours to handle an appeal from a summary judgment motion is meritless. Wells Fargo's counsel (who prepared the MSJ papers in the district court) claims they incurred 44 hours to file *one* appellees' response brief and to present argument. Appellate counsel for Plaintiff, who was not trial counsel and who did not participate in the summary judgment motion in the district court (thus requiring fresh review of the record, legal research and analysis, and drafting), filed *two* briefs and presented argument.  It is not unreasonable that new, appellate counsel for Plaintiff would incur twice the amount of attorney hours to handle the appeal for Plaintiff.

**G.**     **Plaintiff is Entitled to a 2.0 Multiplier**

   **1.**     **Defendant's Requested Negative Multiplier should be Rejected as an Attempt to Undermine the Public Policy Underlying FEHA and Discourage Meritorious Claims**

The Court should keep in mind that the ultimate goal of Wells Fargo is deter future lawsuits by employees.  One of the ways to do that is to argue, as Wells Fargo does here, that the successful Plaintiff's lodestar should be **less than what the insurance defense discount business model counsel was paid by its own client** ($414,962.31 - ½ of the requested lodestar of $814,050 versus $435,000 actually paid to Sheppard Mullin), and then argue that number should be cut in half ($207,025) so that the effective hourly rate of Mr. George ($262) and Mr. Smith ($206), both practicing attorneys with over thirty-five (35) years experience, is substantially less than Ms. Goldstein ($315), a 2017 admittee!  That is a ludicrous suggestion.

12

*Unless* a multiplier is used, a contingency attorney will virtually never be *fairly* compensated (compared to his or her hourly-fee counterpart) given boh the great risk of *no payment* at all and the certainty that even if payment is received, it will be long-delayed. *Ketchum v. Moses* (2001) 24 Cal.4th 1122. *Ketchum* expressly holds that:

> "'The experience of the marketplace indicates'" that unless a "'premium'" abovethe adjusted lodestar is awarded, "'lawyers generally will not provide legal representation on a contingent basis.'" (Id. at 1136, citation omitted.)

As set forth in the moving papers, there were tremendous  risks in taking the case on - and continuing its prosecution after summary judgment was granted - were multiple and could have been easily insurmountable, including: a) the resources to "bury" Ms. Samson and the small law firm; b) the ever-present danger of losing the **entire** case and therefore receiving no fees or out-of-pocket costs; and c) the likely danger of being removed to Federal Court where any verdict would have to be unanimous.

The risks inherent in the unanimous verdict requirement. In federal court, however, if even one juror disagrees on the true reason underlying the defendant's action, the entire case is lost.

### 2.      Wells Fargo is Guilty of Misrepresenting Pre-Trial Settlement Discussions

Without putting too fine a point on it, Mr. Kaufman has made up a pre-trial settlement offer of $500,000 by Wells Fargo.  Such an offer **WAS NEVER** made and is a figment of Mr. Kaufman's imagination. What actually transpired was few minutes of conversation while Mr. Smith was driving down Hawthorne Blvd., to a deposition in another matter.  During the brief conversation bracketology was discussed but the parties realized that neither party's proposed bracket was acceptable to the other.  That was it and absolutely no offers or demands were made.

If Mr. Kaufman had *actually* made a $500,000 verbal settlement offer as he claims and knowing that such an offer might be relevant later as he attempts to do now, it most assuredly would have been confirmed in a follow up writing.  However, the only writing offered by Mr. Kaufman was Mr. Smith's email which confirmed the only offer

ever made by Wells Fargo was a paltry $15,000 settlement at mediation. (Defense Exhibit "F").

## III.   CONCLUSION

As the prevailing party, Plaintiff is entitled to the following award for attorneys fees:

1) Law Offices of Victor George - $1,702,552; and,

2) Esner, Chang & Boyer - $257,481.76

Dated:  March 16, 2021          LAW OFFICES OF VICTOR L. GEORGE

                                          /s/ *Wayne C. Smith*
                                By: _____
                                          VICTOR L. GEORGE
                                          WAYNE C. SMITH
                                          Attorneys for Plaintiff
                                          PATRICIA ANNE T. SAMSON

14